## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SAMUEL BRYANT,
    *Plaintiff*,

    v.

CITY OF HARTFORD, et al.
    *Defendants*.

No. 3:17-cv-1374 (VAB)

## RULING AND ORDER ON MOTION FOR PROTECTIVE ORDER AND ORDER ON SANCTIONS

Samuel Bryant ("Plaintiff") has sued the City of Hartford ("Hartford" or "the City"); Hartford Police Department ("the Police Department"); James C. Rovella, Chief of Police of the Hartford Police Department ("Chief Rovella"); Officer Robert Fogg, Detective Brian Salkeld, Officer John Doe, and Officer Jane Doe (collectively, "Defendants"), alleging violations of his rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, as well his rights under the Connecticut Constitution and other Connecticut law, stemming from Officer Fogg's and Detective Salkeld's alleged use of excessive force on June 28, 2015. *See* Compl. ¶¶ 1–5, Ex. A to Notice of Removal, ECF No. 1 at 7–25 (Aug. 1, 2017).

Defendants have moved for the Court to issue an order to show cause why Plaintiff's counsel should not be sanctioned for inviting a journalist to observe a deposition without notifying Defendants' counsel, and for a protective order prohibiting the journalist from using information gathered during the deposition. Mot. for Protective Order, ECF No. 67 (June 18, 2020) ("Defs.' Mot.").

For the reasons explained below, the Court **DENIES** Defendants' motion for a protective order, and **DENIES AS MOOT** Defendants' motion for an order to show cause.

1

The Court also **ORDERS** as a sanction that Mr. Bryant's counsel pay the reasonable expenses and attorney's fees incurred by Defendants' lawyers for the time spent in the deposition of Mr. Daniel Wicks, Defendants' expert witness. Within fourteen (14) days of the entry of the final judgment in this case, Defendants may submit a motion for its reasonable attorney's fees and costs incurred during the time spent in Mr. Wicks's deposition.

At the time of trial, the Court further will consider whether to prohibit or limit Mr. Bryant's use of Mr. Wicks's deposition in the prosecution of his case, either affirmatively or in rebuttal.

## I.   BACKGROUND

On June 28, 2015, Officer Fogg and Detective Salkeld allegedly stopped Mr. Bryant after he left a convenience store in Hartford. Am. Compl. ¶¶ 15–16, ECF No. 35 (Mar. 23, 2018). After allegedly confiscating the item Mr. Bryant had bought, the officers allegedly "pounced on" Mr. Bryant, "punch[ed], grab[bed] and jerk[ed] his arms and slam[med] him while he was defenseless," chased him, attempted to tase him, "threw him forcefully to the ground and kicked him in the head," handcuffed him, and continued to kick, punch, and hit him while handcuffed. *Id.* ¶¶ 17–22. Mr. Bryant alleges that he has suffered physical and psychological harm as a result of this incident. *Id.* ¶¶ 23–24.

On June 27, 2017, Mr. Bryant filed his Complaint against Defendants in Connecticut Superior Court for the Judicial District of Hartford. Compl.

On August 14, 2017, Defendants removed this case to federal court. Notice of Removal, ECF No. 1 (Aug. 14, 2017).

On March 23, 2018, Mr. Bryant filed an Amended Complaint after the Court granted a motion to dismiss his initial Complaint. Am. Compl. He alleges various claims against the

individual Defendants, in their official and individual capacities, including claims under 42 U.S.C. § 1983 that they violated his rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, and claims under the Connecticut Constitution and state law. *Id.* ¶¶ 25–35, 33–44 (Counts One–Five and Seven–Eleven).[1] He also alleges claims under 42 U.S.C. § 1983[2] and state law against the City of Hartford. *Id.* ¶¶ 28–35, 35–38 (Counts Six and Twelve).

On March 28, 2018, the City of Hartford filed an Answer to the Amended Complaint and a counterclaim against Mr. Bryant, alleging that Mr. Bryant is liable to the City of Hartford for injuries allegedly sustained by Officer Salkeld in the incident on June 28, 2015. City of Hartford Answer, Affirmative Defenses & Counterclaim, ECF No. 36 (Mar. 28, 2018).

On April 18, 2018, Plaintiff's counsel passed away. *See* Status Report to Court, ECF No. 42 (Jan. 12, 2019).

On November 30, 2018, the Court issued an order following a status conference, noting that Plaintiff's counsel had passed away and that a trustee may be managing the cases of Plaintiff's counsel's law offices. Order on Case Status, ECF No. 41 (Nov. 30, 2018). The Court granted "a reasonable passage of time for new Plaintiff's counsel to appear" and directed Defendants' counsel to forward the order to Plaintiff's former counsel's law office. *Id.*

On January 28, 2019, the Court issued another order following Defendants' status report, *see* Status Report to Court, ordering that the trustee "should file a notice with the Court by

---

[1] The paragraphs in the Amended Complaint appear to be misnumbered. The Court refers to Counts for clarity.

[2] Plaintiff describes his claim against the City as a "Monell Violation" claim. Although he does not specify the authority under which he alleges this claim, in *Monell v. Department of Social Services of City of New York*, the Supreme Court "established that a municipality is a person within the meaning of Section 1983" and that municipalities may therefore be sued under 42 U.S.C. § 1983. *Bellamy v. City of N.Y.*, 914 F.3d 727, 756 (2d Cir. 2019) (citing 436 U.S. 658 (1978)) (internal citation and quotation marks omitted). "To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Id.* (citing *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)).

February 8, 2019 informing Plaintiff, Defendants, and the Court of his efforts to retain new counsel or advising of his inability to obtain new counsel," and that "[t]hereafter, [P]laintiff will have until March 8, 2019 to find new counsel, enter a pro se appearance, or file a withdrawal of the action, with prejudice." Order, ECF No. 43 (Jan. 28, 2019).

On April 5, 2019, after the Court granted an extension, Wesley Spears filed a notice of appearance on behalf of Mr. Bryant. Notice of Appearance, ECF No. 46 (Apr. 5, 2019).

On June 17, 2020, the parties conducted the deposition of Defendants' expert witness, Daniel Wicks. Defs.' Mot. at 2. Due to the ongoing COVID-19 pandemic, the deposition was conducted by video conference technology. *Id.* Defendants assert that a journalist, Alexander Wood, "secretly attend[ed] and audio record[ed deposition] proceedings as they were occurring and without the prior knowledge and consent of the deponent . . . or undersigned counsel for the defendants." Defs.' Mot. at 1. They state that Mr. Wood "did not activate his video" or identify himself upon signing into the videoconference deposition, but appeared only by a name icon reading "Alex Wood." *Id.* at 2–3. The court reporter also appeared only by name icon. *Id.* at 3. Defendants state that "[w]hen the deposition began, there was a male voice that was heard, who identified himself as someone from [the court reporter service], who set up and coordinated the deposition," and they "assumed that this was Mr. Wood." *Id.*

After a break later in the deposition, Defendants assert that "the court reporter must have realized she forgot to have the individuals identify themselves and asked all to do so. There was no response form [sic] the person identified as Alex Wood, and when defense counsel asked him to identify himself and what office he was with, Attorney Spears said that Mr. Wood was a reporter from the Journal Inquirer." *Id.* at 3. Mr. Wood then confirmed that he was a reporter and

stated that he was audio recording the deposition. *Id.* Defendants' counsel then asked Mr. Wood to leave the deposition "and indicated their intent to seek court intervention." *Id.* at 4.

Defendants assert that they learned that Mr. Spears "specifically requested that [the court reporter service] send Mr. Wood an invite/link to the deposition, without copying defense counsel," and never mentioning the invitation or Mr. Wood's presence to Defendants' counsel. *Id.* at 3. Defendants state that Mr. Spears never "provide[d] any explanation . . . as to why Mr. Wood was viewing the deposition or why they were not notified of his attendance. *Id.* at 4.

In response to Defendants' objection to Mr. Wood's presence in the deposition, Mr. Spears responded: "[Y]ou never asked." *Id.* at 2 (internal quotation marks omitted). When Defendants asked Mr. Wood to leave the deposition, Mr. Spears stated that he was "going to provide Mr. Wood with a copy of the deposition transcript anyway." *Id.* at 4 (internal quotation marks omitted).

Neither Mr. Bryant nor Mr. Spears has disputed Defendants' characterization of events as they took place at the June 17, 2020 deposition.

On June 18, 2020, Defendants filed a motion for a protective order asserting that Mr. Spears had violated Rule 30(a) of the Local Rules for the District of Connecticut ("Local Rule 30(a)") by inviting a journalist, Alexander Wood, to attend a deposition taken by videoconference without notifying or obtaining the consent of Defendants or the court reporter beforehand, and without identifying the journalist until more than half way through the deposition proceedings upon request by the court reporter. Defs.' Mot. at 1. Defendants moved for a protective order prohibiting the journalist from using information gathered during the deposition, and for the Court to issue an order to show cause why Plaintiff's counsel should not be sanctioned. *Id.*

On June 19, 2020, the Court held a telephonic status conference on Defendants' motion for protective order and for order to show cause. Minute Entry, ECF No. 71 (June 19, 2020).

On the same day, Mr. Bryant filed an objection, and Defendants replied to the objection. Obj. to Mot. for Protective Order, ECF No. 69 (June 19, 2020) ("Pl.'s Obj."); Reply, ECF No. 70 (June 19, 2020) ("Defs.' Reply").

## II.   STANDARD OF REVIEW

### A.  Motion for Protective Order

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Additionally, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such an order may, for example, "requir[e] that a deposition be sealed and opened only on court order." *Id.* "A court may issue a protective [order] only after the moving party demonstrates good cause." *United Illuminating Co. v. Whiting-Turner Contracting Co.*, No. 3:18-cv-327 (WWE), 2019 WL 4926402, at *4 (D. Conn. Oct. 7, 2019) (citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987)).

"To establish 'good cause' under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Burgess v. Town of Wallingford*, No. 3:11-cv-1129 (CSH), 2012 WL

4344194, at *6 (D. Conn. Sep. 21, 2012) (citations and quotation marks omitted). If the moving party meets its burden of establishing good cause for a protective order, the court may balance any countervailing interests in determining whether to exercise its discretion to grant the order. *Id.* Such countervailing interests might include whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public. *Orillaneda v. French Culinary Inst.*, No. 1:07-CV-3206 (RJH) (HBP), 2011 WL 4375365, at *4–*5 (S.D.N.Y. Sept. 19, 2011) (citing *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982)).

"The denial or issuance of a protective order 'is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.'" *Margiotta v. City of Gloversville*, No. 607-CV-0560 (DNH) (GHL), 2008 WL 11505863, at *2 (N.D.N.Y. Aug. 11, 2008) (quoting *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)).

## B. Sanctions

Federal courts have "well-acknowledged inherent power to levy sanctions in response to abusive litigation practices." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (citations omitted) (affirming monetary sanctions where party's dilatory approach to discovery needlessly protracted discovery and required extensive judicial intervention). "[C]ourts must take pains to exercise restraint and discretion when wielding" this power, however. *Id.* Accordingly, generally, "[i]n order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). Only a particularized showing will support a finding of bad faith. *United States v. Int'l Bhd. of*

*Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991).

However, "when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000) (noting there was "no allegation that either of [the lawyer's challenged] actions was undertaken as part of [her] role in representing her client"); *see also George v. Prof'l Disposables Int'l, Inc.*, No. 15-CV-3385 (RA), 2018 WL 2148762, at *3 (S.D.N.Y. May 1, 2018) ("[U]nder *Seltzer*, [the court] has the power to impose monetary sanctions under its inherent authority even absent bad faith for 'conduct not inherent to client representation[.]'").

"Generally, the attorney or party to be sanctioned must be given both fair notice that his or her conduct is sanctionable, and a meaningful opportunity to be heard, either orally or in writing." *Phillips v. Berlex Labs., Inc.*, No. 3:05-cv-81 (CFD) (TPS), 2006 WL 1359124, at *2 (D. Conn. May 11, 2006) (citing *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 129–30 (2d Cir. 1998); *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)). District courts' decisions to impose sanctions are discretionary. *Estate of Warhol*, 194 F.3d at 333 ("We review all aspects of a District Court's decision to impose sanctions for abuse of discretion.").

## III.   DISCUSSION

### A.   Motion for Protective Order

"Generally, dissemination of pretrial discovery materials by the receiving party is not prohibited absent a protective order." *DaCosta v. City of Danbury*, 298 F.R.D. 37, 39 (D. Conn. 2014) (citing *Burgess*, 2012 WL 4344194, at *9 n.17). Dissemination for non-judicial purposes,

8

however, "is unusual and rightly so. The discovery rules are 'a matter of legislative grace.'" *Id.* (quoting *Seattle Times Co.*, 467 U.S. at 32). Discovery is intended to compel parties, including third parties, to divulge information "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co.*, 467 U.S. at 34; *see also S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001) (The Second Circuit "observe[s] that the recent amendment to [Fed. R. Civ. P. 5(d)] provides no presumption of filing all discovery materials, let alone public access to them. Indeed, the rule now prohibits the filing of certain discovery materials unless they are used in the proceeding or the court orders filing."). The purpose of discovery therefore is "to facilitate orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

Nonetheless, a party moving for a protective order prohibiting the dissemination of discovery materials must establish "good cause" by showing that a "clearly defined, specific and serious injury" will occur in the absence of such order. *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006); *see also Bracho as Next Friend of Bracho v. Kent Sch.*, No. 3:18-cv-021 (VLB), 2019 WL 5191793, at *4 (D. Conn. Oct. 15, 2019) ("The requirement of 'good cause' is the 'touchstone of the court's power under Rule 26(c).'" (quoting *Gomez v. Resurgent Capital Servs., L.P.*, 129 F. Supp. 147, 152 (S.D.N.Y. 2015))).

Defendants seek a protective order "prohibiting Mr. Wood or the Journal Inquirer from receiving any documents, transcripts or exhibits from Mr. Wick's deposition; requiring him to destroy the secret audio recording he made without the consent of the deponent and defense counsel, and prohibiting his use of the information gathered during his unauthorized participation in the scheme[.]" *Id.* at 4–5. They argue that

> This case alleges police excessive force and received significant
> coverage when the incident occurred. The overt violation of Local

> Rule 30(a) by [P]laintiff's counsel with the secret inclusion of Mr.
> Wood, who is a "crime and courts" reporter for the Manchester
> Journal Inquirer, during [a] time of national unrest over certain
> police officers' actions in this matter should not be condoned.

*Id.* at 4.

Mr. Spears objects, arguing that, "[a]fter the killing of George Floyd, the media has spent a lot of time reviewing videotaped police excessive force cases," of which he asserts Mr. Bryant's case is one. Pl.'s Obj. at 1. He states that "Alex Wood is working on a story about the case and he contacted counsel for the [D]efendant and asked for information including" items that Mr. Spears had obtained for Mr. Bryant through the Freedom of Information Act. *Id.* Mr. Spears states that he "informed Mr. Wood that [he] was going to take the deposition of [D]efendant's expert," and Mr. Wood asked if he could attend, to which Mr. Spears responded "that he could attend if defense counsel did not object." *Id.*

Defendants argue in reply that, under Local Rule 30(a), "the public is not entitled to attend the deposition," and that Mr. Wood could only attend if there was a knowing and voluntary waiver by counsel, or if the Court were to grant an exception permitting Mr. Wood's attendance upon proper application made by [P]laintiff's counsel," which did not occur here. Defs.' Reply at 1–2. In their view, Mr. Spears's alleged violation of Local Rule 30(a) and the resulting disclosure of deposition proceedings to a reporter warrant the protective order they seek. *Id.*

The Court disagrees.

Notwithstanding any alleged violation of the Local Rules of this District, which will be addressed below, Rule 26(c) of the Federal Rules of Civil Procedure guides the Court's decision as to a protective order. *See United States v. White*, 980 F.2d 836, 844 (2d Cir. 1992) ("[A] construction of a local rule that creates a conflict with a federal rule should be avoided." (internal

citations omitted)). Defendants therefore must establish "good cause" for a protective order. The Court finds that they have failed to do so here.

Defendants have not set forth any "particular" or "specific demonstration of fact" showing that a protective order against Mr. Wood's or the Journal Inquirer's use of the deposition is warranted. *Burgess*, 2012 WL 4344194, at *6. Additionally, "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [ ] deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order." *Flaherty v. Seroussi*, 209 F.R.D. 295, 299 (N.D.N.Y. 2001); *see also Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F. Supp. 449, 487 (S.D.N.Y. 1996) ("Good cause is not established merely by the prospect of negative publicity.").

Defendants' allegations that disclosure of the deposition to a "'crime and courts' reporter . . . during time of national unrest over certain police officers' actions . . . should not be condoned," Defs.' Mem. at 4, are broad and conclusory allegations of harm "unsubstantiated by specific examples or articulated reasoning" as to why a protective order is necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," *Burgess*, 2012 WL 4344194, at *6. (internal citations and quotation marks omitted). As a result, Defendants' allegations "do not satisfy the Rule 26(c) test" for a protective order. *Id.*

Defendants' motion for protective order therefore will be denied.

## B.  Sanctions

The Court held a hearing on Defendants' motion for an order to show cause why Mr. Spears should not be sanctioned, at which he had an opportunity to respond to Defendants' argument for sanctions. Minute Entry, ECF No. 71 (June 19, 2020). Mr. Spears had further

opportunity to respond to Defendants' request for sanctions in his response to Defendants' motion. Pl.'s Obj.

Having considered parties' arguments at the telephonic hearing and in their briefing, the Court denies Defendants' motion for an order to show cause as moot and now addresses whether to issue sanctions.

Federal courts have a "well-acknowledged inherent power to levy sanctions in response to abusive litigation practices," *Hyde Park*, 163 F.3d at 135 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (internal quotation marks omitted))), that "derives from the sage acknowledgment that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates,'" *id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). This authority includes the power "'to sanction attorneys for conduct not inherent to client representation, such as[] violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom[,] without a finding of bad faith.'" *Williams v. Lutheran Med. Ctr.*, 776 F. App'x 730, 731 (2d Cir. 2019) (summary order) (quoting *Seltzer*, 227 F.3d 36, 42).

Local Rule 30(a) ("Attendance") provides the following:

> Depositions on oral examination or on written interrogatories are deemed to constitute private proceedings which the public is not entitled to attend. Any person other than the witness being deposed, the parties to the action, the parent of a minor deponent, counsel for the witness or any party, or any person who has been disclosed by any party as an expert witness in the case shall, at the request of counsel for any party, or the witness, be excluded from the hearing room while the deposition of any person is being taken. Application for an exception to this rule may be made to the presiding Judge.

D. Conn. L. Civ. R. 30(a). The parties do not dispute that Rule 30(a) governs the deposition at issue here.

Defendants argue that "Plaintiff's counsel deliberately violated this rule and intentionally failed to notify defense counsel or Mr. Wicks, of Mr. Wood's attendance under circumstances where he knew that defendants did not appreciate his presence and would not have consented if so notified." Defs.' Mot. at 4.

Mr. Spears argues that Local Rule 30(a) does not require him to notify Defendants of the presence of a third party in the deposition, but rather "[i]t is defense counsel[s'] duty to inquire as to the identify of any person not exempted by Rule 30(a) and to request that the [] person [be] excluded from the deposition." Pl.'s Mem. at 2. In Mr. Spears's view, "[c]ounsel for the defendants suggest that counsel of the [P]laintiff should be a mind reader and, therefore, should have told them details about Mr. Wood." *Id.* He asserts further that "it is their fault that they did not inquire into [the] identity [of] Mr. Woods and his purpose for being [at the deposition]." Pl.'s Obj. at 2.

Plaintiffs argue in reply that "The Rule makes clear that the public is not entitled to attend the deposition of [the deponent]." Defs.' Reply at 1. They argue that "for defense counsel to have waived their right to maintain the privacy of the proceeding, the waiver must be knowing and voluntarily made," which required Mr. Spears to disclose that Mr. Wood would be attending the deposition before the deposition started. *Id.* at 1–2. In their view, Mr. Spears "essentially argues that since defense counsel 'did not ask' Mr. Wood to identify himself, [ ] defense counsel waived their right to request Mr. Wood to leave the proceeding." *Id.* They contend that by "arrang[ing] for Mr. Wood to attend and participate in the deposition" and failing to notify defense counsel or the deponent that a member of the public was present so they had an opportunity to object to his presence, Mr. Spears violated the general prohibition in Local Rule 30(a) against public participation in depositions. *Id.* at 2.

The Court agrees.

"A district court's inherent power to sanction derives from the fact that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Estate of Warhol*, 194 F.3d at 336 (quoting *Chambers*, 501 U.S. at 43). The Court's power thus is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (citation omitted). "A court may 'safely rely on its inherent power' to impose sanctions where, 'in the informed discretion of the court, neither the statute nor the Rules are up to the task.'" *In re Plumeri*, 434 B.R. 315, 328 (S.D.N.Y. 2010) (quoting *Chambers*, 501 U.S. at 50).

Local Rule 30(a) states that "[d]epositions . . . constitute private proceedings which the public is not entitled to attend." D. Conn. L. Civ. R. 30(a). But Mr. Spears made a conscious decision to invite a reporter for the express purpose of making these "private proceedings" public. To compound matters, Mr. Spears did not advise the reporter about the obligations Local Rule 30(a) imposed upon him and that these were "private proceedings." As a result, Mr. Wood proceeded to record the deposition, further undermining the clear intent of Local Rule 30(a).

Significantly, Mr. Spears' actions were unnecessary. If he had simply allowed the deposition to proceed without inviting Mr. Wood and then sent Mr. Wood a copy of the deposition transcript afterward, there might have been less of a legal issue. *See, e.g.*, *Jemine v. Cake Man Raven, Inc.*, No. 08-CV-3072, 2009 WL 3174289, at *1 (E.D.N.Y. Oct. 2, 2009)) (denying motion for protective order restraining plaintiffs from disseminating other materials or making statements to reporters after plaintiffs' counsel had already provided a reporter with a deposition transcript in the case, because defendants had not shown that their "rights to a fair

jury trial will be impaired by other pretrial publicity" (citing *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991))); *but see TheStreet.com*, 273 F.3d at 233 (holding that transcripts of deposition testimony were not "judicial documents" that carried presumption of public access); *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Documents that play no role in the [court's] performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the . . . reach" of presumption of public access); *Stern v. Cosby*, 529 F. Supp. 2d 417, 425 (S.D.N.Y. 2007) (issuing protective order prohibiting parties from "disclos[ing] or releas[ing] any further excerpts from the deposition transcript or video" to media).

While Mr. Spears defends his actions based on the failure of the counsel for Defendants to inquire about Mr. Wood's possible presence at the outset of the deposition, that argument misses the forest and focuses only on the trees. In the midst of a global pandemic, remote depositions have become necessary "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. And remote depositions and the technology associated with them create opportunities for confusion and exploitation. Mr. Spears used this opportunity to exploit the situation here, hoping that no one would ask about Mr. Wood's virtual presence.

Of course, Mr. Spears is right in one respect: counsel for the Defendants should have inquired as to who had access to the proceedings before they began. The Court, however, is not sanctioning Mr. Spears for having invited Mr. Wood and failing to announce his presence. *Cf.* Fed. R. Civ. P. 30(b)(5) ("The officer must begin the deposition with an on-the-record statement that includes . . . the identity of all persons present."). Instead, the sanction is a consequence of his failure to ensure that no one would record "private proceedings" without any way to control

for the accuracy of that recording, and without seeking prior permission to do so. *See Burgess*,
2012 WL 4344194, at *7 (party may only record deposition "if he gives *prior notice* to the
deponent and other parties in the action of his intention to so record" (citing Fed. R. Civ. P.
30(b)(3)(B)) (emphasis in the original)).

Significantly, a deposition properly conducted under Rule 30 of the Federal Rules of
Civil Procedure has such controls. For example, "[o]n request by the deponent or a party before
the deposition is completed, the deponent must be allowed 30 days after being notified by the
officer that the transcript or recording is available . . . ." Fed. R. Civ. P. 30(e)(1). During this
time, the deponent may "review the transcript or recording" and, "if there are changes in form or
substance, [ ] sign a statement listing the changes and the reasons for making them." Fed. R. Civ.
P 30(e)(1)(A)–(B). Furthermore, there must be a certification "that the deposition accurately
records the witness's testimony." Fed. R. Civ. P. 30(f)(1). The "certificate must accompany the
record of the deposition." *Id.* And "[u]nless the court orders otherwise," the deposition must be
sealed and protected "against loss, destruction, tampering, or deterioration." *Id.*

Appropriately, Rule 30 allows for the imposition of "an appropriate sanction—including
the reasonable expenses and attorney's fees incurred by any party—on a person who impedes,
delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P 30(d). By allowing a
reporter to record separately the deponent's examination and to make that recording or any
information contained on it public, Mr. Spear has "frustrate[d] the fair examination of the
deponent." This deponent will not have the benefit of a review process intended to correct, if
necessary, reasonable errors in transcription or in the deponent's testimony. *Burgess*, 2012 WL
4344194, at *7 (rejecting plaintiff's argument that making his own video recording of a
deposition would "avoid distortions, not create them" because Rule 30(e)(1) affords each

deponent the "opportunity to review and correct any errors in the transcript prior to its production in final form by the court reporter" (internal citation and quotation marks omitted)). Instead, Mr. Spears has empowered Mr. Wood to make those decisions himself.

Mr. Spear's conscious decision to allow Mr. Wood to attend and ultimately, record this deposition, a blatant attempt to make public "private proceedings" without sufficient regard for the accuracy of what would be reported, warrants "an appropriate sanction." As a result, at the conclusion of this case before this Court, Mr. Spears will be required to pay "the reasonable expenses and attorney's fees incurred by" the Defendants' lawyers for the time spent in Mr. Wicks's deposition.

In addition, if at the time of trial, it is apparent that the unauthorized recording of this deposition has complicated the trial of this case, then the Court further will consider prohibiting or limiting Mr. Bryant's use of that deposition at trial, either affirmatively or in rebuttal. If necessary, this additional sanction will negate any perceived advantage, at least for trial purposes, from a public airing of the deposition's alleged contents before trial. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 269 (2d Cir. 1999) (district court "did not abuse [its] discretion in barring [defendant] from using [plaintiff]'s deposition to impeach his testimony at trial," where defendant failed to produce relevant documents under Rule 30 until the eve of trial, stating: "Preventing [defendant] from capitalizing on [plaintiff]'s inability to describe his specific participation in various transactions was an eminently fair exercise of [district court]'s discretion."); *see also Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007)) (observing that "[j]udicial efficiency [was] impaired," as "[t]he parties, counsel, and the [c]ourt have had to spend time and resources dealing with issues generated by the media's disproportionate attention

17

to this case," and expressing "concern[] that release of the video and transcript would create additional impediments to the fair and efficient administration of justice").[3]

To the extent that Mr. Spears argues that he did not know Mr. Wood would be recording the deposition testimony, as Mr. Spears suggested to counsel for the Defendants regarding Mr. Wood's presence at the deposition, the answer is simple: he should have asked. Indeed, it strains credulity for Mr. Spears to claim not to have known that a reporter would not want to report and therefore record the deposition proceedings. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78–79 (2d Cir. 2000) ("A claim is colorable 'when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'" (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980)); *Hyde Park*, 163 F.3d at 136 (affirming a Magistrate Judge's finding of bad faith to support sanctions where he "made a finding that defendants had acted in 'conscious disregard of their discovery obligations'"); *see also Seltzer*, 227 F.3d at 41 (imposing sanction based on "the lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court.").[4]

Accordingly, the above-discussed sanctions will be imposed.

---

[3] Obviously, if the matter is tried and the deponent does testify at the trial, the deponent will have sworn or affirmed a commitment to provide only truthful testimony. *See U.S. v. Dunnigan*, 507 U.S. 87, 94 (1993) ("A witness testifying under oath or affirmation violates [the federal criminal perjury statute] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."); *see also* 18 U.S.C. § 1621(1) ("Whoever . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury . . . .").

[4] Even if Mr. Spears believed that Mr. Wood would obtain consent from Defendants on his own—which he has not argued—the obligations created by rules of civil procedure do not bind Mr. Wood as a member of the public but rather bind Mr. Spears as an officer of the court and counsel of record in this case. *Valente v. Lincoln Nat'l Corp.*, No. 3:09-cv-693 (MRK), 2010 WL 3522495, at *1 (D. Conn. Sept. 2, 2010) ("The discovery process—while rarely pleasant—actually works quite well when the attorneys for all the parties, consistent with their dual roles as both advocates for their clients and officers of the Court, are willing to cooperate with one another and act reasonably and in accordance with the Federal Rules of Civil Procedure.").

## IV.    CONCLUSION

For the reasons explained above, the Court **DENIES** Defendants' motion for a protective order, and **DENIES AS MOOT** Defendants' motion for an order to show cause.

The Court also **ORDERS** as a sanction that Mr. Bryant's counsel pay the reasonable expenses and attorney's fees incurred by Defendants' lawyers for the time spent in the deposition of Mr. Daniel Wicks, Defendants' expert witness. Within fourteen (14) days of the entry of the final judgment in this case, Defendants may submit a motion for its reasonable attorney's fees and costs incurred during the time spent in Mr. Wicks's deposition.

At the time of trial, the Court further will consider whether to prohibit or limit Mr. Bryant's use of Mr. Wicks's deposition in the prosecution of his case, either affirmatively or in rebuttal.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of July, 2020.

        /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge