**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SAMUEL BRYANT,
      *Plaintiff,*

    v.

CITY OF HARTFORD, ET AL,
      *Defendants.*

No. 3:17-cv-01374 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Samuel Bryant ("Plaintiff") has sued Hartford police officers, Officer Robert Fogg, Detective Brian Salkeld, unidentified police officers (together, "Hartford Police Department Defendants"), Chief James C. Rovella, and the City of Hartford, Connecticut (collectively, with the Hartford Police Department Defendants, "Defendants"), alleging claims arising from police conduct during and after his arrest on June 28, 2015. Compl., ECF No. 1 (Aug. 14, 2017); Am. Compl., ECF No. 35 (Mar. 23, 2018) ("Am. Compl.").

Defendants have moved for summary judgment dismissing all claims made by Mr. Bryant. Mot. for Summ. J., ECF No. 77 (Sept. 4, 2020) ("HPD Mot."); City of Hartford & Police Chief James Rovella's Mot. for Summ. J., ECF No. 79 (Sept. 4, 2020) ("H. & R. Mot.").

For the reasons explained below the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions for summary judgment.

The Court grants summary judgment in favor of Hartford Police Department Defendants on Mr. Bryant's claim that they failed to render adequate medical assistance.

The Court denies summary judgment as to all other claims. Regarding the excessive force claim, this case will proceed to trial against Hartford Police Department Defendants only with respect to the events that took place after the assault to which Mr. Bryant has already pled guilty

1

under Conn. Gen. Stat. § 53a-167c(a)(1), and after the initial use of the taser against Mr. Bryant, when he fled after the assault.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

On June 28, 2015, between approximately 6:30 and 7:00 p.m., Officer Robert Fogg and Detective Brian Salkeld approached Samuel Bryant outside of a convenience store in Hartford, Connecticut, where he had been observed holding a wine cooler in a paper bag. Am. Compl. ¶¶ 15–16; Def.'s Local R. 56(a)(1) Statement ¶¶ 1–2, ECF No.77-2 (Sept. 4, 2020) ("Def.'s 56(a)(1) Statement"); *see also* Bryant Dep., Ex. B. to Def.'s 56(a)(1) Statement at 46–49, ECF No. 77-3 (Sept. 4, 2020) ("Bryant Dep."). The parties offer divergent accounts of the events immediately following the police officers' arrival.

Mr. Bryant alleges that, after the officers "confiscated the [unopened] wine cooler," they asked him whether he "[had] anything on [him]." Am. Compl. ¶ 17; Bryant Dep. at 49:14-25, 50:1-3. He told the officers that he had a knife, "because it was visible." *Id.* at 50:1-3. After the officers took the knife and his identification, Officer Fogg "grabbed [Mr. Bryant] by the arm," asked Mr. Bryant to place his "hands on the back of the car," and "started searching Mr. Bryant, patting [him] down." *Id.* at 51:9-52:5.

---

[1] The facts are taken from Mr. Bryant's Amended Complaint, Defendants' Local Rule 56(a) Statement, Mr. Bryant's Local Rule 56(a) Statement, and supporting exhibits filed by all parties. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(2), 56(a)(3).

According to Mr. Bryant, Officer Fogg then "grabbed [Mr. Bryant's] wrist and twisted it . . . bringing it behind [Mr. Bryant] . . . forcefully." *Id*. at 52:2-8. During his deposition, Mr. Bryant stated that Officer Fogg told him he was going to "place [Mr. Bryant's] hands behind [his] back." *Id*. at 67:9-14, 21-23. In his Complaint, Mr. Bryant alleges that the twisting of his "left arm and wrist . . . caused [him] to stumble." Am. Compl. ¶¶ 18–19. After he stumbled, "the officers [allegedly] pounced on him and proceeded to punch, grab[,] and jerk his arms and slam him while he was defenseless, until he was . . . able to break away from their clutches in order to defend himself." *Id*. ¶ 19. At his deposition, however, Mr. Bryant claimed that after Office Fogg twisted his wrist, "[Mr. Bryant] kind of went on the move like a reaction. After that, they . . . started beating on [him.]" Bryant Dep. at 52:5-8. Mr. Bryant admitted that he "made some type of movement which caused the officers to react," "to think that [he] was resisting." *Id.* at 53:8-10. Mr. Bryant says that his "reaction was to get away" because the officer started "grabb[ing] him and [ ] hitting on [him]." *Id.* at 58:11-12. "It was tasers and batons out and [his] first reaction [was] to get away from this because [he] felt like [his] life was in danger at the time." *Id.* at 58:11-16. He claimed that the "twisting the wrist" was "what set it off." *Id.* at 58:20-21. "When [he] flinched, they got aggressive after that, because [he] was compliant from the beginning." *Id.* at 58:20-24. He decided to run because the officers "[p]unched [him], elbow to the back of the head," for "ten, fifteen seconds." *Id.* at 59:6-17.

Mr. Bryant acknowledged that he "probably did" strike Detective Salkeld "[i]n the mix of blocking and all that," but has "no knowledge of hitting him." *Id.* at 69:14-16. He believes that he hit an officer when he "spun off" the officer trying to arrest him. *Id.* at 101:6-10. On August 27, 2015, before the Superior Court in Hartford, Connecticut, Mr. Bryant pled guilty to assault on a public safety officer under Conn. Gen. Stat. § 53a-167c(a)(1). Ex. E to Def.'s 56(a)(1)

Statement at 1:12-15, 2:16-25, ECF No. 77-3 (Sept. 4, 2020). The Superior Court found that Mr. Bryant entered the plea "voluntarily and knowingly." *Id.* 8:4-9.

Mr. Bryant recalls the officers attempting to tase him, because he heard the officers stating that he should be tased. Bryant Dep. at 70:3-9, 71:8-9. He was running home and attempted to cut through an opening in a fence but tripped, at which point Officer Fogg reached Mr. Bryant and struck him, either with a baton and/or the butt end of the Taser. *Id.* at 73:3–74:24; 75:10-22 ("baton and everything on the back of the head."); 78:3–79:24 ("No. It was the butt. He was trying to put another cartridge in and he just hit me and there were knees and everything after that."). In his Amended Complaint, Mr. Bryant alleges that when the officers reached him again, they "threw him forcefully to the ground and kicked him in the head." Am. Compl. ¶ 22a. Mr. Bryant confirmed that he was not yet in handcuffs "at the time when [he] was being struck." Bryant Dep. at 83:15-24.

Mr. Bryant alleges that once he was placed in handcuffs, the officers "started beating [him] again" with a "baton" on the back of his left leg, which left bruises. *Id.* at 87:14-23, 88:1-23. According to Mr. Bryant, he was not resisting at this point, though he was being "asked to get on the ground," which he found to be impossible because he was being "[held] up by a much bigger guy than [him]." *Id.* at 88:1-14. In his Amended Complaint, Mr. Bryant additionally alleges that, once he was handcuffed, the officers "kicked, punched[,] and hit him . . . including with a hard object, such as the butt of a gun or a baton, on the head, causing him to temporarily lose consciousness." Am. Compl. ¶ 22b. They also "lifted him up by his handcuffs, dragged him[,] and dropped him." *Id.* ¶ 22c.

The Hartford Police Department Defendants' description of the events that unfolded on the evening of June 28, 2015 differ. They claim that the officers asked Mr. Bryant for

identification after observing him "drinking from a glass bottle, which was inside a paper bag." Def.'s Local R. 56(a)(1) Statement ¶¶ 1–2, ECF No.77-2 (Sept. 4, 2020) ("Def.'s 56(a)(1) Statement"). When Mr. Bryant reached for his wallet, the officers noticed a pocketknife clipped to his front pocket. *Id.* ¶ 2. "The knife was secured and a Terry pat down of Mr. Bryant was conducted[,]" at which point Officer Fogg "felt a heavy object in Mr. Bryant's right front coat pocket consistent with a firearm." *Id.* ¶¶ 2–3. "Officer Fogg attempted to secure Mr. Bryant in handcuffs and told Mr. Bryant to place his hands behind his back, but Mr. Bryant physically resisted Officer Fogg by pushing away from the cruiser." *Id.* ¶ 3. "Mr. Bryant proceeded to flee from the officers on foot" and Officer Fogg and Detective Salkeld ran after him. *Id.* ¶ 4.

The two officers "briefly caught up to [Mr. Bryant]," at which point "Mr. Bryant swung his elbows and threw punches as Detective [ ] Salkeld and Officer [ ] Fogg grappled with him in an attempt to take him into custody." *Id.* "During the altercation, Mr. Bryant used his elbow and struck Detective [ ] Salkeld in the nose, breaking it and causing it to bleed profusely." *Id.* Detective Salkeld "was briefly incapacitated" because of the blow to his face. *Id.* ¶ 5. During this time, Officer Fogg "continued to chase [Mr. Bryant,] instructing him to stop and announcing that he would use his TASER if Mr. Bryant did not comply." *Id.* Mr. Bryant "was not affected by the TASER because [ ] he was wearing a leather jacket." *Id.* Officer Fogg then prepared a "second TASER cartridge, ordered [Mr. Bryant] to stop, and warned Mr. Bryant that he would 'TASE' him." *Id.* ¶ 6. According to Defendants:

> Mr. Bryant ignored Officer Fogg's commands and the TASER was deployed[.] This deployment was [ ] unsuccessful. Mr. Bryant got up and charged Officer Fogg with clenched fists. Officer Fogg utilized the TASER as an 'emergency impact device' and struck Mr. Bryant with the TASER in the head.

5

*Id.* At this point, Detective Salkeld "had recovered enough to join Officer Fogg . . . to again attempt to take Mr. [Bryant] into custody. Detective Salkeld wrapped his arms around Mr. Bryant in a 'bear hug' and attempted to get him off balance, bring him to the ground, and handcuff him." *Id.* ¶ 7. "Officer Fogg drew his baton and struck Mr. Bryant in the thigh several times in an attempt to gain Mr. Bryant's compliance. As Officer Fogg utilized his baton, Detective Salkeld continued to struggle to gain control of Mr. Bryant." *Id.* ¶ 9. According to Defendants, "Mr. Bryant [ ] fell to the ground but continued to resist and refused to place his hands behind his back to allow officers to handcuff hi[m]." *Id.*

A video was initiated at the point at which Detective Salkeld wrapped his arms around Mr. Bryant. *See* Ex. C to Def.'s 56(a)(1) Statement, ECF No. 77-3 https://www.youtube.com/watch?v=6rDESnEnrm8 (last visited September 29, 2021). The video shows one officer standing behind Mr. Bryant, with his back against the wall of a building and his arms wrapped around Mr. Bryant. Both men are hunched forward for much of the interaction, and Mr. Bryant's arms appear to be tucked under the officer's. The second officer, who is standing to the left of Mr. Bryant and the first officer, is striking the back of Mr. Bryant's left thigh with a baton. He strikes the back of Mr. Bryant's thigh three times, stops for three seconds, strikes again three times, and again stops for five seconds. The video pans away from the interaction for two seconds. When the three individuals return to view again, the second officer is seen striking Mr. Bryant three more times, and the first officer and Mr. Bryant eventually fall forward and to their right. Mr. Bryant falls face first and the second officer can be seen placing handcuffs on Mr. Bryant. Three additional officers arrive but none of them assist in handcuffing Mr. Bryant.

Mr. Bryant alleges that he suffered numerous physical injuries, "some or all of which are permanent, including but not limited to cuts, bruises and abrasions and scars, back, neck, wrist and knee sprains and strains; disc injuries and head hematomas and trauma." Am. Compl. ¶ 23. Mr. Bryant also alleges that he "has suffered and will continue to suffer from mental anguish and psychological trauma, as well as profound feelings of humiliation, loss of dignity, anxiety, depression, post-concussive effects, post-traumatic stress disorder, flashbacks, dizziness, headaches, chronic, repetitive sleep interruption and deprivation, social withdrawal and fear of police officers." *Id.* ¶ 24.

### B.  Procedural History

On June 27, 2017, Mr. Bryant filed his Complaint against Defendants in the Superior Court of Connecticut, Judicial District of Hartford. *See Bryant v. City of Hartford*, H14H-CR15-0680469-S (Conn. Super. Ct. June 27, 2017).

On August 14, 2017, Mr. Bryant removed the case to this Court. Notice of Removal, ECF No. 1 (Aug. 14, 2017).

On October 23, 2017, the Hartford Police Department Defendants filed an Answer with affirmative defenses. Answer, Affirmative Defense & Demand for Trial by Jury Filed on Behalf of Defs. Robert Fogg, Brian Salkeld, John Doe & Jane Doe, ECF No. 16 (Oct. 23, 2017).

On November 14, 2017, the City of Hartford filed an Answer with affirmative defenses and a counterclaim. City of Hartford's Answer, Affirmative Defenses & Countercl., ECF No. 19 (Nov. 14, 2017).

On the same day, Chief Rovella filed an Answer with affirmative defenses. Def. James C. Rovella's Answer & Affirmative Defenses, ECF No. 20 (Nov. 14, 2017).

Also on the same day, the Hartford Police Department Defendants filed a motion to dismiss. Hartford Police Department's Mot. to Dismiss, ECF No. 21 (Nov. 14, 2017); Mem. of Law in Supp. of Mot. to Dismiss Def.'s [*sic*] Mot. to Dismiss, ECF No. 21-1 (Nov. 14, 2017).

On January 12, 2018, a motion hearing was held regarding the Hartford Police Department Defendants' motion to dismiss, as well as Chief Rovella and the City of Hartford's motion for security for costs. Min. Entry, ECF No. 30 (Jan. 12, 2018).

On the same day, the Court granted the motion to dismiss. Order, ECF No. 31 (Jan. 12, 2018).

On March 23, 2018, Mr. Bryant filed an Amended Complaint against all Defendants. Am. Compl.

On March 28, 2018, the City of Hartford filed an Answer with affirmative defenses and a counterclaim. City of Hartford's Answer, Affirmative Defenses & Countercl., ECF No. 36 (Mar. 28, 2018).

On the same day, Chief Rovella filed an Answer with affirmative defenses. Def, James C. Rovella's Answer & Affirmative Defenses, ECF No. 37 (Mar. 28, 2018).

On October 26, 2018, the Court held a telephonic status conference. Min. Entry, ECF No. 40 (Oct. 26, 2018).

On November 30, 2018, the Court issued an order on the status of the case, concerning the replacement of Mr. Bryant's counsel. Order on Case Status, ECF No. 41 (Nov. 30, 2018).

On January 21, 2019, Defendants filed a joint status report concerning Mr. Bryant's progress on finding new counsel. Status Report to Ct., ECF No. 42 (Jan. 21, 2019).

On May 6, 2019, the Court held a status conference. Min. Entry, ECF No. 49 (May 6, 2019).

On November 12, 2019, the parties filed a joint motion for referral to a magistrate judge for a settlement conference. Joint Mot. for Referral for Settlement Conf. to a Magistrate Judge, ECF No. 52 (Nov. 12, 2019).

On November 13, 2019, the Court granted the motion for referral to a Magistrate Judge for settlement conference and referred the case. Order, ECF No. 53 (Nov. 13, 2019); Order, ECF No. 54 (Nov. 13, 2019).

On August 12, 2020, the parties participated in a settlement conference before Magistrate Judge William Garfinkel. Min. Entry, ECF No. 76 (Aug. 12, 2020). The parties did not reach a settlement agreement.

On September 4, 2020, the Hartford Police Department Defendants filed a motion for summary judgment. HPD Mot.; Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 77-1 (Sept. 4, 2020) ("HPD Mem.").

On the same day, the City of Hartford and Chief Rovella also filed a motion for summary judgment. H. & R. Mot.; City of Hartford & Police Chief James C. Rovella's Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 79-1 (Sept. 4, 2020) ("H. & R. Mem.").

On January 11, 2021, Mr. Bryant filed an opposition to Defendants' motions for summary judgment. Pl.'s Opp'n to Summ. J. by Officer Robert Fogg, Detective Brian Salkeld, Chief Rovella & the City of Hartford, ECF No. 86 (Jan. 11, 2021) ("Pl.'s Opp'n").

On January 19, 2021, the Court held a status conference. Min. Entry, ECF No. 88 (Jan. 19, 2021).

On January 26, 2021, the Hartford Police Department Defendants filed a reply to Mr. Bryant's opposition. Defs.' Reply to Pl.'s Obj. to Mot. for Summ. J., ECF No. 93 (Jan. 26, 2021) ("Defs.' Reply").

On July 20, 2021, the Court issued an Order dismissing four counts[2] of the Amended Complaint, because Mr. Bryant stipulated to their dismissal in his opposition to Defendants' motions for summary judgment. Order, ECF No. 98 (July 20, 2021).

On the same day, the City of Hartford filed a notice of supplemental authority. City of Hartford's Notice of Suppl. Authority in Supp. of Mot. for Summ. J., ECF No. 99 (July 20, 2021).

On July 22, 2021, the Court held a motion hearing via videoconference regarding the pending motions for summary judgment. Min. Entry, ECF No. 100 (July 22, 2021).

On the same day, the Court issued an order providing Mr. Bryant with permission to file a sur-reply. Order, ECF No. 101 (July 22, 2021).

On July 28, 2021, Mr. Bryant filed a sur-reply to the Hartford Police Department Defendants' reply to his opposition to their motions for summary judgment. Pl.'s Sur-Reply to Officer Fogg and Detective Salkeld's Reply, ECF No. 102 (July 28, 2021).

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat

---

[2] Mr. Bryant's objection to Defendants' motions for summary judgment does not object to the dismissal of three Counts: Count 2, against all Defendants, Pl.'s Opp'n at 9; Count 12, against the City of Hartford, *id.* at 16; and Count 13, against Chief Rovella, *id.* Mr. Bryant also conceded indemnification under Conn. Gen. Stat. § 7-465. *Id.*

an otherwise properly supported motion for summary judgment; the requirement is that there be

no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes

over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can

affect the outcome under the applicable substantive law.") (citing *Anderson*, 477 U.S. at 248).

"The inquiry performed is the threshold inquiry of determining whether there is the need

for a trial—whether, in other words, there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by

documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of

material fact," the nonmoving party must do more than vaguely assert the existence of some

unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation

omitted).

The party opposing the motion for summary judgment "must come forward with specific

evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence

is merely colorable, . . . or is not significantly probative, . . . summary judgment may be

granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967);

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record,

including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any

other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Mr. Bryant's Amended Complaint contains thirteen claims: (1) use of unreasonable and/or excessive force in violation of the Fourth, Eight, and/or Fourteenth Amendment of the United States Constitution against Hartford Police Department Defendants; (2) use of unreasonable and/or excessive force in violation of rights secured by Article I, §§ 7 and 9 of the Connecticut Constitution against Hartford Police Department Defendants; (3) assault and battery under the common law of Connecticut against Hartford Police Department Defendants; (4) negligent conduct under the common law of Connecticut against Hartford Police Department Defendants; (5) failure to render adequate medical assistance under the state and federal Constitutions against Hartford Police Department Defendants; (6) liability of the City of Hartford under Connecticut General Statute § 52-557n; (7) reckless and/or willful conduct under the common law of Connecticut against Hartford Police Department Defendants; (8) intentional infliction of emotional distress under the common law of Connecticut against Hartford Police Department Defendants; (9) negligent infliction of emotional distress under the common law of

Connecticut against Hartford Police Department Defendants; (10) failure to intervene in violation of the Fourth and/or Fourteenth Amendment to the United States Constitution against Hartford Police Department Defendants; (11) failure to intervene in violation of Article I, §§ 7, 8, 9, and/or 20 of the Connecticut Constitution against Hartford Police Department Defendants; (12) *Monell* violations against the City of Hartford; (13) supervisory liability against Chief James C. Rovella. Defendants moved for summary judgment as to all counts. Mr. Bryant has since stipulated to the dismissal of Count Two, against all Defendants, Pl.'s Opp'n at 9; Count Twelve, against the City of Hartford, *id.* at 16; and Count Thirteen, against Chief Rovella, *id.*[3]

The Court will address each of the remaining claims in turn.

**A.  Use of Unreasonable and Excessive Force**

Claims for use of excessive force by police officers in the course of an arrest or other seizure are considered under the reasonableness standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394–95 & n.10 (1989) (claim that police officer used excessive force against free citizen during an arrest was evaluated "under the Fourth Amendment and its 'reasonableness standard'" and not as a Fourteenth Amendment substantive due process claim); *id.* at 398 ("[The] Eight Amendment standard applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" (quoting *Ingraham v. Wright*, 430 U.S. 651, 671, n.40 (1977)).

The Fourth Amendment prohibits the use of excessive force during arrests. *Id.* at 394–95. Claims of excessive force under the Fourth Amendment are governed by the "objective

---

[3] In his Opposition to Summary Judgment, Mr. Bryant conceded indemnification pursuant to Conn. Gen. Stat. § 7-465. Pl.'s Opp'n at 16. Mr. Bryant's Opposition to Summary Judgment stated that this was Count Fifteen of his claims against Defendants.  Neither the Complaint nor the Amended Complaint, however, contained a fifteenth count. To the extent that the Court referred to a Count Fifteen in its July 20, 2021 Order, ECF No. 98, it did so in error.

reasonableness" standard. *Id*. at 388. Application of this standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation omitted). The relevant evaluation must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and with an awareness that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97.

It is an objective standard that "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. "[I]n light of the fact-specific nature of the inquiry on an excessive force claim . . . , granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (internal quotation marks and alteration omitted).

Mr. Bryant contends that the officers' actions were unreasonable "because he was attempting to escape, but from fear for his life." Pl.'s Opp'n at 5. Mr. Bryant also disputes "ever assault[ing] the Defendants, or resist[ing] arrest." *Id.* at 5–6. Finally, Mr. Bryant argues that a jury could conclude that Officer Fogg used excessive or deadly force when he struck Mr. Bryant on the head with the butt end of a TASER while apprehending him. *Id.* at 6. The use of the TASER in this manner was allegedly confirmed by a citizen who videotaped the moments before

the officers placed the handcuffs on Mr. Bryant. *Id*. at 3. Mr. Bryant also claims Officer Fogg and Detective Salkeld "continued to beat [him] even after he had been handcuffed." *Id*. at 7.

The Hartford Police Department Defendants contend that the force used by the officers was not excessive and did not violate Mr. Bryant's constitutional rights. They rely on Mr. Bryant's resistance to being handcuffed, Mr. Bryant's possession of a knife, Officer Fogg's belief that he had felt a firearm in Mr. Bryant's jacket, and Mr. Bryant's assault of Detective Salkeld. HPD Mem. at 13. The Hartford Police Department Defendants argue that summary judgment should be granted because under the circumstances, "no reasonable jury could conclude that the force used by the Officers under these circumstances was objectively unreasonable in violation of the Fourth Amendment." *Id.* at 14.

The Hartford Police Department Defendants argue that the excessive force claim also is fully barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defs.' Reply at 1–3. Specifically, they argue that by pleading guilty to assault, Mr. Bryant has acknowledged that the officers did not use excessive force.

The Court disagrees.

The Court begins with the Hartford Police Department Defendants' argument that Mr. Bryant's excessive force claim is fully barred by *Heck v. Humphrey*, which prevents "civil tort actions" from proceeding if they would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." 512 U.S. at 486. Excessive force claims under § 1983 are barred only if "facts actually determined in [the individual's] criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). The Court thus must "examine the relationship between the criminal conviction and each of the

plaintiff's civil claims." *Jackson v. Suffolk Cty. Homicide Bureau*, 135 F.3d 254, 256 (2d Cir.

1998).

> The assault statute that Mr. Bryant pled guilty to provides that,

> > A person is guilty of assault of public safety . . . personnel when,
> > with intent to prevent a reasonably identifiably peace officer . . .
> > from performing his or her duties, and while such peace officer . . .
> > is acting in the performance of his or her duties, [ ] such person
> > causes physical injury to such peace officer[.]

Conn. Gen. Stat. § 53a-167c(a)(1). As previously mentioned, an excessive force claim "requires

careful attention to the facts and circumstances of each particular case, including . . . whether

[the claimant] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490

U.S. at 396.

> By pleading guilty to this specific charge, Mr. Bryant already has conceded his intention

to prevent a peace officer "from performing his or her duties" and "caus[ing] physical injury to

such peace officer." Conn. Gen. Stat. § 53a-167c(a)(1). So, he cannot now plausibly claim he

intended to comply with the police officers or that the police officers were not "performing

[their] duties" before the assault. *Id.* As a result, any claim of excessive force before Mr.

Bryant's assault would be barred because any such claim would "necessarily require the plaintiff

to prove the unlawfulness of his conviction or confinement." *Heck,* 512 U.S. at 486.

> The elements of the assault charge are not, however, "incompatible" with the claim of

excessive force in its entirety. *Sullivan*, 225 F.3d at 166. A jury still could find that, after the

events resulting in the assault charge to which Mr. Bryant pled guilty, the Hartford Police

Department Defendants used excessive force to detain him. *See Shapard v. Attea*, 710 F. App'x

15, 17–18 (2d Cir. 2017) (summary order) (reversing district court's dismissal of an excessive

force claim under *Heck*, because the elements of excessive force under the Eighth Amendment

and second-degree assault are not incompatible); *Powell v. Scanlon*, 390 F. Supp. 2d 172, 178–79 (D. Conn. 2005) (holding that an assault conviction did not bar an excessive force claim).

And there is a genuine dispute of material fact as to the threat Mr. Bryant posed and the force necessary for the Hartford Police Department Defendants to use during Mr. Bryant's arrest, after Mr. Bryant assaulted Detective Salkeld. The competing accounts of what happened and the fact-intensive inquiry involved—including assessment of a video taken by a civilian—presents a genuine factual dispute about the objective reasonableness of the use of force that should be made by a jury. *See Hemphill v. Schott*, 141 F.3d 412, 417 (2d. Cir. 1998) (finding that the question of whether the use of potentially deadly force was reasonable remained in dispute when two of the factors were contested). A jury, not this Court, must decide the credibility of these competing accounts. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Accordingly, any claim as to excessive force relating to the actions of the police officers after Mr. Bryant assaulted Detective Salkeld shall remain in the case, and any claim as to excessive force relating to the police officers' actions before Mr. Bryant's assault of Detective Salkeld shall be dismissed from the case.

**B. Qualified Immunity Argument**

Even if a reasonable jury could find that the Hartford Police Department Defendants violated Mr. Bryant's Fourth Amendment rights and used excessive force, the Hartford Police Department Defendants still may be entitled to summary judgment on qualified immunity grounds. *See generally Gonzalez v. City of Schenectady,* 728 F.3d 149, 157–58 (2d Cir. 2013) (affirming district court's summary judgment ruling that, though defendants arrested

plaintiff without probable cause and conducted an unreasonable search under

the Fourth Amendment, defendants were nevertheless entitled to summary judgment on qualified

immunity grounds).

"Qualified immunity protects federal and state officials from money damages and

unnecessary and burdensome discovery or trial proceedings." *Coollick v. Hughes*, 699 F.3d 211,

219 (2d Cir. 2012) (internal quotation marks omitted) (citing *Crawford-El v. Britton*, 523 U.S.

574, 598 (1998)); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified

immunity shields police officers acting in their official capacity from suits for damages unless

their actions violate clearly-established rights of which an objectively reasonable official would

have known." (internal quotation and alteration omitted)). It "is an affirmative defense that the

defendants have the burden of raising in their answer and establishing at trial or on a motion for

summary judgment." *Coollick*, 699 F.3d at 219 (internal quotation omitted).

When a court analyzes the question of whether public officials are entitled to qualified

immunity, there are two issues that guide the inquiry. *See Zalaski v. City of Hartford*, 723 F.3d

382, 388–89 (2d Cir. 2013). First, the court considers whether "the facts show that the officer's

conduct violated plaintiff's constitutional rights." *Id.* Second, if the answer is no, "further inquiry

is unnecessary because [ ] there is no viable constitutional claim," but if the answer is yes, "or at

least not definitively no," the court may move on to the second question: "was the right clearly

established at the time of defendant's actions?" *Id.* (internal citation omitted).

Courts need not consider these two questions in order, and may consider the latter

question first, which may be "particularly appropriate where the former turns on difficult or

novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the

challenged conduct was not objectively unreasonable in light of existing

law." *Id.* (citing *Coollick*, 699 F.3d at 219–20) (internal quotation marks omitted).

Also, although the Fourth Amendment prohibits the use of excessive force in carrying out

an arrest, "the right to make an arrest or investigatory stop necessarily carries with it the right to

use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396

(internal citation omitted). "An officer conducting a search is entitled to qualified immunity

where clearly established law does not show that the search violated the Fourth Amendment."

*Pearson v. Callahan*, 555 U.S. 223, 243–44 (citing *Anderson v. Creighton*, 483 U.S. 635, 641

(1987)).

"In the Second Circuit, qualified immunity analysis consists of a three-step inquiry

examining whether there is an alleged violation of a constitutional right, whether the right was

clearly established at the time of the conduct, and—if the right was clearly established—whether

the defendants' actions were objectively reasonable." *Palmierei v. Kammerer*, 690 F. Supp. 2d

34, 46 (D. Conn. 2010) (quoting *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211

(2d Cir. 2003)).

"[T]he clearly established right must be defined with specificity." *City of Escondido, Cal.

v. Emmons*, 139 S. Ct. 500, 502–03 (2019) (finding that defining the clearly established right as

"the right to be free of excessive force" was too general). It is a "constitutional right[] of which a

reasonable person would have known" and "reasonableness is judged against the backdrop of the

law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*)

(internal citations and quotations omitted). "[S]pecificity is especially important in

the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for

an officer to determine how the relevant legal doctrine, here excessive force, will apply to the

factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*per curiam*) (internal quotation and alteration omitted). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (citing *Ashcroft v. al-Kidd*, 653 U.S. 731, 741 (2011)).

Mr. Bryant argues that "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness of a police officer's use of force under the Fourth Amendment." Pl.'s Opp'n at 8 (alteration omitted) (internal quotation marks omitted) (quoting *Kerman v. City of N.Y.*, 261 F.3d 229, 240 (2d Cir. 2001)). Mr. Bryant argues that:

> [w]here the parties' versions of the material facts differ markedly with regards to a Fourth Amendment excessive force claim, such differences generally mean [ ] the issue of excessive force is for the jury, whose unique task [ ] is to determine the amount of force used, the injuries suffered[,] and the objective reasonableness of the officer's conduct.

*Id.* at 4–5 (internal alterations and quotation marks omitted).

According to Mr. Bryant, "the defendant officers are not entitled to qualified immunity on the claims for use of excessive force, because no officer could have objectively believed that the amount of force used was reasonable." *Id.* at 8. Mr. Bryant says that "[his] testimony alone establishes a genuine dispute about the reasonableness of the use of force." *Id.* at 5. He further alleges that "it was only after [Detective] Salkeld and [Officer] Fogg began beating [him] [ ] severely that he fled in a panic." *Id.* "[Mr.] Bryant disputes that he ever assaulted the Defendants, or resisted arrest, and [argues] that he did not intentionally strike [Detective] Salkeld." *Id.* Mr. Bryant says "the Court must deny summary judgment because the issue of reasonableness of the

use of force depends on the jury's assessment of the credibility of the witnesses." *Id.* at 6
(internal citation omitted).

Mr. Bryant further argues that "a jury could easily conclude that [Officer] Fogg's use of
the baton to the back of [Mr.] Bryant's head when he apprehended him, and his repeatedly
striking [Mr.] Bryant in the head with the butt end of the TASER (combined with [Detective]
Salkeld's multiple baton strikes to [Mr.] Bryant's legs) constituted excessive force or use [of]
deadly force." *Id.* According to Mr. Bryant, "[b]oth [Detective Salkeld and Officer Fogg]
continued to beat [him] even after he had been handcuffed[,] [and] [s]uch use of force was
constitutionally impermissible and violated the City's use of force policies." *Id.* at 7.

The Hartford Police Department Defendants, for their part, argue that they are "entitled to
qualified immunity because it was reasonable for them to have been mistaken about Mr. Bryant's
intention[, as] there is [allegedly] no dispute that [he] was actively resisting the officers['] efforts
to handcuff him and assaulted them." HPD Mem. at 13–14. They specifically note that the
bystander's video shows that the baton was used "while Mr. Bryant actively resisted being
handcuffed and ceased when the [o]fficers were able to accomplish this." HPD Mem. at 14.
Defendants argue that "no reasonable jury could conclude that the force used by the Officers
under these circumstances was objectively unreasonable in violation of the Fourth Amendment."
*Id.*

The Hartford Police Department Defendants further argue that "there is no genuine issue
of material fact that the Officers' use of force was reasonable and necessary under the
circumstances." *Id.* at 17. According to Defendants,

> The operative statute regarding the use of force by police is Conn.
> Gen. Stat. § 53a-22, which provides in relevant part that "a peace
> officer . . . is justified in using physical force upon another person
> when and to the extent that he or she reasonably believes such to be

> necessary to: (1) Effect an arrest or prevent the escape from custody
> of a person whom he or she reasonably believes to have committed
> an offense . . . or (2) defend himself or herself or a third person from
> the use or imminent use of physical force while effecting or
> attempting to effect an arrest or while preventing or attempting to
> prevent an escape . . . ."

*Id.* (quoting Conn. Gen. Stat. § 53a-22). The Defendants argue that they complied with this statute and therefore the "force used . . . was objectively reasonable and thus lawful." *Id.*

The Court disagrees, in part.

The prohibition on excessive force while effectuating an arrest is clearly established. *See Outlaw v. City of Hartford*, 884 F.3d 351, 364 (2d Cir. 2018) ("That the law prohibits excessive force when using force to make an arrest is neither a recent nor surprising development." (internal citation omitted)); *Mickle v. Morin*, 297 F.3d 114, 122 (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited" (internal citation omitted)); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest." (internal citations omitted)). But the use of some degree of force during an arrest is not necessarily unreasonable. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

Mr. Bryant acknowledges that Officer Fogg said he was going to "place [Mr. Bryant's] hands behind [his] back," Bryant Dep. 67:9-14, 21-23, and that he attempted, although allegedly in response to use of force, "to get away." *Id*. at 58:12; 59:8. As discussed above, *supra* Section III.A, Mr. Bryant already has conceded his intention to prevent a peace officer "from performing

his or her duties," Conn. Gen. Stat. § 53a-167c(a)(1), and cannot now plausibly claim he intended to comply with the police officers.

The assault conviction, however, does not definitively resolve the question of any use of force by the police officers. It only establishes that the Hartford Police Department Defendants did not use excessive force before the assault, when Mr. Bryant was intentionally preventing them from performing their duty of placing him under arrest. The sequence of events that the parties claim took place after the assault then become the focus.

First, there is the officers' initial decision to use a taser on Mr. Bryant. The parties agree that Mr. Bryant continued to run after the assault, and that the officers attempted to tase Mr. Bryant while he was running. HPD Mem. at 7 ("[T]he cartridge deployed but Mr. Bryant did not react to and was not affected by the TASER because he was wearing a leather jacket."); Bryant Dep. 70:17–71:15 (recalling taking off the jacket "[w]hen [he] was running" because it had "[t]he TASER things" on it).

The Hartford Police Department Defendants are entitled to qualified immunity as to this attempt to use a taser on Mr. Bryant, because he was fleeing and evading arrest. *See Soto v. Gaudett*, 862 F.3d 148, 159 (2d Cir. 2017) (finding no precedent "that a suspect who was fleeing had a right not to be stopped by means of a TASER"); *Brown v. City of New York*, 862 F.3d 182, 191–92 (2d Cir. 2017) (upholding grant of qualified immunity where officers used force against an arrestee who was actively resisting arrest and not yet handcuffed); *cf. Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 69 (2d Cir. 2018) ("It is clearly established that officers may not use a taser against a compliant or non-threatening suspect.").

Second, there is the issue of whether the Hartford Police Department Defendants are entitled to qualified immunity for their actions after the use of the taser. Here, there are genuine

issues of material fact that still need to be resolved. Specifically, a jury must determine whether Mr. Bryant actively resisted arrest after he ran through and slipped at the opening of a fence. The parties agree that Mr. Bryant ran up until the moment he fell at an opening in the fence. *See* Def.'s 56(a)(1) Statement ¶ 5 ("Officer Fogg pursued him on foot, following him to the rear yard of 154 Brook Street, where Mr. Bryant stumbled."); Bryant Dep. 75:16-22 ("He was right behind me, Fogg, so I tripped because of the fence.").

From the moment Mr. Bryant tripped onward, the parties disagree on material facts that need to be left to a jury. The Hartford Police Department Defendants allege that after Mr. Bryant stumbled, Officer Fogg "deployed" his TASER a second time, and after Mr. Bryant "got up and charged Officer Fogg with clenched fists," Officer Fogg "struck Mr. Bryant with the TASER in the head." HPD Mem. at 7. Mr. Bryant does claim to have been hit in the back of the head. Bryant Dep. 75:16-22 (stating that, after he tripped, "that's when the baton and everything on the back of the head"); Pl.'s Opp'n. at 6 ("[A] jury could easily conclude that Fogg's use of the baton to the back of Bryant's head when he apprehended him, and his repeatedly striking Bryant in the head with the butt end of the TASER . . . constituted excessive force or use [of] deadly force.").

There also is a disagreement over whether Mr. Bryant was resisting arrest when Officer Fogg was striking him with a baton behind his left thigh. According to the Hartford Police Department Defendants, "Officer Salkeld was [then] attempting to wrestle Mr. Bryant to the ground and into handcuffs," HPD Mem. at 13, but Mr. Bryant claims he was not resisting arrest at this point and that he was being "asked to get on the ground," which he found impossible

because he was being "[held] up by a much bigger guy than [him]," Bryant Dep. 88:10-14. From the bystander's video, a reasonable jury could credit Mr. Bryant's account.

As a result, the Hartford Police Department Defendants are not entitled to qualified immunity because of genuine issues of material fact, except for the actions leading up to and including the first use of the taser. Resolution of the facts will dictate whether the officers are entitled to qualified immunity. *See, e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) ("[Q]uestions as to what situation confronted [the city's corporation counsel], what acts he performed, and his motivation in performing those acts were questions of fact; they were to be— and were—answered by the factfinder.")); *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court. [. . .] [I]f there is such a dispute," however, "the factual questions must be resolved by the factfinder.") (citations and internal quotation marks omitted)); *see also Outlaw*, 884 F.3d at 368 ("The jury may be asked to make its findings by answering special interrogatories.").

If Mr. Bryant, as he alleges, was no longer on the run or fighting the officers when he was struck on the head and hit on the back of his thigh, then the officers are not entitled to qualified immunity. The Second Circuit has clearly established that officers may not use significant force against a suspect who is no longer resisting or posing a threat. *See Jones v. Treubig*, 963 F.3d 214, 238–39 (2d Cir. 2020) (concluding that "qualified immunity would not immunize an officer for tasing an uncuffed arrestee a second time where the arrestee was no longer resisting and was not posing a threat to the safety of officers or others"); *see also Lennox v. Miller*, 968 F.3d 150, 157  (2d Cir. 2020) ("On July 22, 2016, it was therefore clearly established by our Circuit caselaw that it is impermissible to use significant force against a

25

restrained arrestee who is not actively resisting."); *Gionfriddo*, 910 F.3d at 69 ("It is clearly established that officers may not use a taser against a compliant or non-threatening suspect." (internal citation omitted)).

If Mr. Bryant was actively resisting or charging at the officers, however, then the Hartford Police Department Defendants may be entitled to qualified immunity. *See, e.g.*, *Faulks v. City of Hartford*, No. 3:08-CV-270 (VLB), 2010 WL 259076 at *3 (D. Conn. Jan. 19, 2010) (finding that it was reasonable for officers to use their batons to get plaintiff "down onto the ground and into handcuffs," where plaintiff was resisting and "clutching his right hand in a closed fist as if he possessed an[ ] unknown object or weapon").

The Court also is unable to definitively determine whether Mr. Bryant was struck while he had already been handcuffed, an allegation that the Hartford Police Department Defendants have not addressed. *See* Bryant Dep. 87:14-23, 88:17-23 (alleging that once he was placed in handcuffs, the officers "started beating [him] again."). Strikes to Mr. Bryant after he had been placed in handcuffs would not entitle the officers to qualified immunity. *See Treubig*, 963 F.3d at 225 ("Before the incident at issue here in April 2015, it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." (internal citation omitted)); *cf. Brown*, 862 F.3d at 191–92 (upholding grant of qualified immunity where officers used force against an arrestee who was actively resisting and not yet handcuffed).

Based on these unresolved facts, as well as the different potential interpretations of the bystander's video, discussed above, there are factual disputes regarding Mr. Bryant's attempt to

flee and the force used by the officers, which prevent the Court from concluding whether the officers are entitled to qualified immunity on the disputed facts, after the initial use of the taser.

### C. Assault and Battery

"To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to him and that the application of force or violence was unlawful." *Ochoa v. City of W. Haven,* No. 3:08-CV-00024 (DJS), 2011 WL 3267705, at *10 (D. Conn. July 29, 2011) (alteration omitted) (internal quotation marks and citations omitted).

The Hartford Police Department Defendants argue that, because the amount of force used in this case was objectively reasonable, and therefore lawful, the assault and battery claims necessarily fail. *See* HPD Mem. at 16–17.

Because the Court has concluded that there are genuine and material factual disputes regarding whether the Hartford Police Department Defendants used excessive force in effectuating Mr. Bryant's arrest, their motion for summary judgment also will be denied as to the claims of assault and battery. *See Orell v. Muckle,* No. 3:11-CV-00097, 2012 WL 3231017, at *6 (D. Conn. Aug. 6, 2012) (denying summary judgment on assault and battery claims on the basis of unresolved factual disputes regarding excessive force claim).

### D. Negligent Infliction of Emotional Distress

To prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that a "defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446 (2003) (internal quotation marks and citation omitted). Courts in this District have determined that use of excessive force "also can state a

claim for negligent infliction of emotional distress." *Ochoa*, 2011 WL 3267705, at *11 (internal quotation marks and citation omitted).

The Hartford Police Department Defendants argue that they have governmental immunity from liability for negligent infliction of emotional distress. HPD Mem. at 18–21. Under Connecticut law, municipal employees generally have qualified immunity in the performance of discretionary governmental acts. *See Mulligan v. Rioux*, 229 Conn. 716, 727–28 (1994). There are three exceptions to this discretionary act immunity: (1) when the alleged conduct involves malice, wantonness, or intent to injure; (2) when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and (3) when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. *Id.*; *Doe v. Petersen*, 279 Conn. 607, 615–16 (2006).

This final exception to discretionary act immunity applies here. "Connecticut courts have held that where, as here, an officer is alleged to have used excessive force against a person, he may be found to have subjected an identifiable person to imminent harm and therefore is not protected from suit by the doctrine of governmental immunity." *Odom v. Matteo*, 772 F. Supp. 2d 377, 395 (D. Conn. 2011) (collecting cases).

Accordingly, summary judgment will be denied with respect to Mr. Bryant's negligent infliction of emotional distress claim.

### E.  Negligence

Mr. Bryant asserts a claim for negligence against the Hartford Police Department Defendants for their alleged failure to exercise reasonable care in their use of force against Mr. Bryant and in their failure to intervene. Defendants argue that they are protected by

governmental immunity for their discretionary acts comprising the bases for these claims. HPD Mem. at 18–21.

As discussed above, however, negligence-based claims against the Hartford Police Department Defendants for their alleged use of excessive force fall into one of the exceptions for discretionary act immunity under Connecticut law. For similar reasons, the claim for negligence against the Hartford Police Department Defendants for failure to intervene falls into the same exception. Mr. Bryant was an identifiable person subjected to imminent harm by the Hartford Police Department Defendants' failure to act. *See, e.g.*, *Morales v. Town of Glastonbury*, No. 3:09-CV-713, 2012 WL 124582, at *10 (D. Conn. Jan. 17, 2012); *Carey v. Maloney,* 480 F. Supp. 2d 548, 560 (D. Conn. 2007).

Accordingly, the negligence claims against the Hartford Police Department Defendants shall proceed.

### F.  Failure to Render Adequate Medical Assistance

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In order to prevail on a deliberate indifference to medical needs claim, two elements must be satisfied: "[the plaintiff] must show that []he had a 'serious medical condition' and that it was met with 'deliberate indifference.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). Mr. Bryant claims that the Hartford Police Department Defendants denied him adequate medical care because: (1) "Despite the fact that [Mr.] Bryant had suffered multiple blows to his head, body, and legs, he was seen for just 15 minutes by the medical staff when the [HPD] Defendants told St. Francis Hospital officials" that they needed to take him to prison; (2) "It was not until a

month and a half afterward, when he had been incarcerated, that he was [ ] treated for the pain in his legs from the assault." Pl.'s Opp'n at 10. According to Mr. Bryant, the interaction led him to suffer "numerous serious, physical injuries . . . including but not limited to cuts, bruises[,] and abrasions and scars, back, neck, wrist and knee sprains and strains; disc injuries and head hematomas and trauma." Am. Compl. ¶ 23.

The Hartford Police Department Defendants challenge the legal sufficiency of Mr. Bryant's Fourteenth Amendment § 1983 claim that the Hartford Police Department Defendants failed to provide adequate medical assistance. They claim that "Mr. Bryan presented at St. Francis Hospital complaining of scrapes and a cut to the back of his head, which was eventually closed with two (2) staples," which does not amount to a "serious medical need." HPD Mem. at 22. The Hartford Police Department Defendants also argue that there was no deliberate indifference because an ambulance was called for Mr. Bryant after his arrest and he was "treated at the scene by paramedics and transported to St. Francis Hospital, where he arrived at [ ] 7:26 p.m. He was treated at St. Francis and discharged at 10:02 p.m." HPD Mem. at 23.

As to Mr. Bryant's claim that the Hartford Police Department Defendants denied him adequate medical care because he was not treated for the pain in his legs "until a month and a half afterward," *see* Pl.'s Opp'n at 10, Mr. Bryant has not presented evidence to suggest that the Hartford Police Department Defendants were responsible for any potential delay in treatment. As a result, there is no genuine issue of material fact as to the claim that the Hartford Police Department Defendants were deliberately indifferent as to the alleged delay. For the additional reasons set forth below, the Court concludes that there is no genuine issue of material fact as to Mr. Bryant's claim of failure to render adequate medical assistance, and the Hartford Police Department Defendants are entitled to summary judgment on this claim as a matter of law.

### 1. Serious Medical Need

"The 'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990).

Mr. Bryant alleges that he suffered "cuts, bruises and abrasions, scars, back, neck, wrist and knee sprains and strains; disc injuries and head hematomas and trauma." Am. Compl. ¶ 23. The evidence presented, however, establishes only that he suffered a cut requiring stitches, scrapes from his fall, and bruises. The pre-hospital care report also notes that Mr. Bryant's "chief complaint" was "pain." Ex. D to Def.'s 56(a)(1) Statement at 40, ECF No. 77-3 (Sept. 4, 2020) ("Ex. D to Def.'s 56(a)(1) Statement"). The hospital's "discharge disposition" reflect that the doctors recommended "Home or Self Care," and that his condition at the time of discharge was "stable." *Id.*

Construing the facts in the light most favorable to the plaintiff, a jury could not conclude that Mr. Bryant suffered from a "serious medical need" that contemplated a condition of urgency. Moreover, as discussed below, the sole potential condition of urgency—the cut requiring stitches—was tended to at the hospital, which Mr. Bryant was taken to shortly after his interaction with the Hartford Police Department Defendants.

### 2. Deliberate Indifference

Relevant to the second element, "deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles v. Orange County.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Darnell*, 849 F.3d at 33–34). Under the *mens rea* prong, a pretrial detainee must allege that "the defendant-official acted intentionally to impose the alleged

condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition

posed to the pretrial detainee even though the defendant-official knew, or should have known,

that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Even assuming that Mr. Bryant had a serious medical need, there is no genuine issue as to

whether the Hartford Police Department Defendants met this need with deliberate indifference. It

is undisputed that an ambulance arrived on scene at 7:13 p.m., shortly after the interaction

between Mr. Bryant and HPD Defendants, and that it arrived to the hospital at 7:26 p.m. Pl.'s

Opp'n at 6; Ex. D to Def.'s 56(a)(1) Statement at 40. Contrary to Mr. Bryant's claim that he

"was seen for just 15 minutes" at the hospital, Pl.'s Opp'n at 10—a claim unsupported by any

documentation or other probative record evidence—hospital records show that he arrived at the

hospital at 7:30 p.m. and was discharged at 10:02 p.m. Pl.'s Opp'n at 6; Ex. D to Def.'s 56(a)(1)

Statement at 1. During this time, Mr. Bryant received two staples to the laceration on his head,

the only injury that appeared to require urgent attention. Pl.'s Opp'n at 3. In light of these

undisputed facts, the Hartford Police Department Defendants' alleged misconduct—namely, not

allowing Mr. Bryant enough time to be treated at the hospital—cannot rise to the level of

deliberate indifference, and Mr. Bryant's deliberate indifference claims fail as a result.

Accordingly, Defendant's motion for summary judgment will be granted as to Mr.

Bryant's claim for failure to render adequate medical assistance.

### G. §52-557n Liability

"Connecticut General Statute section 52-557n(a)(1) provides in part that, '[e]xcept as

otherwise provided by law, a political subdivision of the state shall be liable for damages to

person or property caused by: (A) The negligent acts or omissions of such political subdivision

or any employee, officer or agent thereof acting within the scope of his employment or official

duties . . . .'" *Morales,* 2012 WL 124582, at *11 (quoting Conn. Gen. Stat. § 52-557n). And while the statute extends "the same discretionary act immunity that applies to municipal officials to the municipalities themselves[,]" *Violano v. Fernandez,* 280 Conn. 310, 320 (Conn. 2006), "the Connecticut Supreme Court continues to apply the common law exemptions to governmental immunity set forth above," *Carey*, 480 F. Supp. 2d at 567 (D. Conn. 2007) (citing *Petersen*, 279 Conn. at 614). As described *supra*, Mr. Bryant's claims include allegations of negligence as to which governmental immunity does not apply.

Accordingly, summary judgment will be denied as to his claim for municipal liability under Conn. Gen. Stat. § 52-557n.

### H. Reckless and/or Willful Conduct

To prevail on a claim of recklessness under Connecticut common law, a plaintiff must demonstrate a state of mind that indicates "more than negligence, more than gross negligence." *Craig v. Driscoll*, 262 Conn. 312, 342 (2003) (internal citation omitted), *superseded by statute on other grounds as stated in O'Dell v. Kozee,* 307 Conn. 231, 265 (2012). "Recklessness is a state of consciousness with reference to the consequences of one's acts . . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . [R]eckless  misconduct . . . is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action . . . ." *Id.* (internal citation omitted).

The Hartford Police Department Defendants argue that their conduct "cannot be deemed reckless . . . because the defendants used constitutionally permissible and objectively reasonable force upon [ ] [P]laintiff in the course of their arrest of him[.]" HPD Mem. at 24. As stated

above, however, genuine issues of material fact remain regarding how the **Hartford Police Department** Defendants acted, which are properly left to a jury.

## I.   **Intentional Infliction of Emotional Distress**

Under Connecticut law, four elements must be established to prevail under a claim for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210 (Conn. 2000) (internal quotation marks and citation omitted). "Courts have held that the use of excessive force can establish a claim for intentional infliction of emotional distress." *Frappier v. City of Waterbury,* No. 3:07-CV-1457 (WWE), 2008 WL 4980362, at *3 (D. Conn. Nov. 20, 2008).

The Hartford Police Department Defendants argue that summary judgment is warranted on Mr. Bryant's claim for intentional infliction of emotional distress because "the conduct of the defendant Officer[s] cannot be viewed as '[o]utrageous[,]' 'atrocious[,]' and 'utterly intolerable in a civilized society'" because their "actions were permissible and objectively reasonable." *See* HPD Mem. at 26. This argument falls short because the Court has found that material issues of fact exist regarding Mr. Bryant's underlying claim of excessive force. *See Zadrowski v. Town of Plainville,* No. 3:09-CV-1367 (DJS), 2013 WL 5435491, at *13 (D. Conn. Sept. 30, 2013) (rejecting defendants' argument that plaintiff's emotional distress was not severe and that summary judgment therefore should be granted because "summary judgment on a claim for intentional infliction of emotional distress is often inappropriate when there is an associated excessive force claim with disputed issues of fact" and even in the absence of medical evidence,

plaintiff need only "present [ ] significant, non-conclusory statements supporting a finding of 'severe' emotional distress" to survive summary judgment). Moreover, Mr. Bryant has alleged suffering fear and anxiety, including but not limited to post-traumatic stress disorder, as a result of this incident. Am. Compl. ¶¶ 24, 41.

Accordingly, summary judgment on Mr. Bryant's claim of intentional infliction of emotional distress will be denied.

### J.   Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).

"Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Branen,* 17 F.3d at 557. Furthermore, intervention need not be physical. *See, e.g.*, *Morales*, 2012 WL 124582, at *5 (where "time elapsed between the first and second strikes" by fellow police officers, defendant officers had potential "opportunity to intervene, at least verbally"); *Durham v. Nu'Man,* 97 F.3d 862, 868 (6th Cir. 1996) ("Coming to [plaintiff's] aid would not have required [defendant] to

become physically involved in the incident."). The Court cannot find as a matter of law that the

Hartford Police Department Defendants had no opportunity to intervene in the use of force

against Mr. Bryant, viewing the facts of this case in the light most favorable to Plaintiff.

Accordingly, summary judgment as to the § 1983 claim against the Hartford Police

Department Defendants will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** in

part and **DENIED** in part.

The Court **GRANTS** summary judgment in favor of Hartford Police Department

Defendants on Mr. Bryant's claim that they failed to render adequate medical assistance. This

claim is hereby **DISMISSED**.

The Court **DENIES** summary judgment as to all other claims. Regarding the excessive

force claim, this case will proceed to trial against Hartford Police Department Defendants only

with regard to the events that took place after the assault to which Mr. Bryant has already pled

guilty under Conn. Gen. Stat. § 53a-167c(a)(1), and after the initial use of the taser against Mr.

Bryant, when he fled after the assault.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2021.

/s/ Victor A. Bolden_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE